IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

THERNELL SMITH,

                        Plaintiff,

            v.                          Civil Action No.
                                        9:06-CV-01196 (LEK/DEP)

T. CHRISTOPHER, *Sergeant at Auburn*
*Correctional Facility, et al.*,

                        Defendants.

_____

APPEARANCES:                    OF COUNSEL:

<u>FOR PLAINTIFF</u>:

THERNELL SMITH, *Pro Se*

<u>FOR DEFENDANTS</u>:

HON. ANDREW M. CUOMO        HEATHER R. RUBINSTEIN, ESQ.
Office of the Attorney General   Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____ <u>REPORT AND RECOMMENDATION</u>

      Plaintiff Thernell Smith, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 claiming deprivation of his constitutional rights.  In his complaint plaintiff alleges that he was assaulted, threatened, and harassed by the defendants in retaliation for having commenced a legal action and filed several grievances against corrections officers at the facility in which he was housed at the relevant times.  As relief plaintiff seeks the recovery of compensatory and punitive damages against the defendants, who are sued in their individual capacities.

Currently pending before the court are cross-motions for summary judgment.  Plaintiff initiated the motion filing process maintaining, based upon his complaint and a supporting affidavit, that no reasonable factfinder could rule in defendants' favor with respect to his excessive force, harassment, retaliation and conditions of confinement claims.  In response, defendants have both opposed plaintiff's motion and cross-moved for partial summary judgment, seeking dismissal of plaintiff's claims against defendant Shick, based upon the fact that he has not been served or otherwise appeared in the action, and of all claims interposed against defendants Whitney and Mitchell, asserting that plaintiff's allegations against those defendants, even if true, fail to rise to a level of constitutional significance.

2

Having carefully reviewed the record now before the court, in light of the parties' respective arguments, I find that plaintiff has fallen well short of carrying his burden of demonstrating that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law in connection with his claims.  Turning to defendants' cross-motion, I find that because the record definitively establishes defendant Shick has neither been served nor appeared in the action, and in fact is deceased, and the court has thus not acquired jurisdiction over him, plaintiff's claims against him are subject to dismissal.  I further find, however, that because the record discloses the existence of disputed issues of fact surrounding at least portions of plaintiff's retaliation claims against defendants Whitney and Mitchell, I recommend that the balance of defendants' motion be denied in principal part.

I.   BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the custody of the New York

---

[1]   In light of the procedural posture of the case, when analyzing each respective summary judgment motion I have drawn all inferences and resolved all ambiguities in favor of the non-moving party. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  It should be noted, however, that the facts surrounding the relevant events, particularly those concerning the physical altercation on October 19, 2003 between plaintiff and various corrections officers, are vigorously contested.

State Department of Correctional Services ("DOCS").  *See generally* Complaint (Dkt. 1).  At the times relevant to the claims set forth in his complaint, the plaintiff was designated to the Auburn Correctional Facility ("Auburn"), where he was transferred on or about January 22, 2003, and assigned to a cell located in the facility's special housing unit ("SHU").[2]  *Id*. at ¶ 4.

On October 19, 2003, upon returning to the facility SHU from having taken a shower, plaintiff discovered that his cell had been searched, and a set of headphones confiscated.[3]  Complaint (Dkt. No. 1) ¶¶ 10-18; Smith Aff. (Dkt. No. 20) ¶ 3.[4]  Plaintiff attributes the search and headphone confiscation, as well as other less severe forms of harassment received at the hands of correction officers at Auburn, to a complaint lodged by him one day earlier against Corrections Sergeant Christopher, one of the

---

[2]     According to plaintiff's disciplinary record, at the time of the events which form the basis for his claims he had been continuously housed in SHU disciplinary confinement since December 4, 2000.  See Defendants' Motion (Dkt. No. 23) Exh. A.

[3]     Plaintiff characterizes the search of his cell as "ransacking".  Complaint (Dkt. No. 1) ¶ 12.  While offering no affidavits to this effect, in statements attached as exhibits to their motion papers the defendants refute that allegation, describing the event as a routine cell search customarily made while prisoners confined in SHU custody take showers.  Defendants' Motion (Dkt. No. 23) Exh. B.

[4]     As part of his motion packet Smith has submitted a document styled as "Plaintiff's Rule 7.1 Statement".  Since that statement is sworn, and thus the functional equivalent of an affidavit, I have accorded it evidentiary weight for purposes of the instant cross motions, and will refer to it herein as "Smith Aff.".

defendants named in the action, for threatening him, as well as having previously commenced an action against various corrections workers at Auburn, including Sergeant Christopher.[5] Complaint (Dkt. No. 1) ¶¶ 18, 23; Smith Aff. (Dkt. No. 20) ¶¶ 3-5 and Exh. A; *see Smith v. Burge*, 9:03-cv-0955, 2006 WL 2805242 (N.D.N.Y., filed Sept. 28, 2006) ("*Smith I*").

Following plaintiff's discovery of the cell search and headphone confiscation matters escalated, eventually leading to a physical confrontation between Smith and corrections workers attempting to remove mechanical restraints from his hands, initially involving the plaintiff and Corrections Officer G. Shick, another of the named defendants, but later additionally including Sergeant Christopher, Corrections Officer Knox, and Corrections Officer Hnatiw.  Complaint (Dkt. No. 1) ¶¶ 14-17; Smith Aff. (Dkt. No. 20) ¶¶ 6-8.  The parties' versions of the incident and the events which precipitated it are somewhat divergent.  Plaintiff asserts that the confrontation was prompted by defendant Shick, who after placing his hand into plaintiff's cell and removing a handcuff from Smith's left wrist

---

[5]     The formal written complaint lodged by Smith regarding Sergeant Christopher's threat is dated October 20, 2003, the day after the use of force against him by prison officials.  *See* Plaintiff's Motion (Dkt. No. 20) Exh. A.  In his complaint, however, plaintiff asserts that he verbally reported the matter to Lieutenant Estabrook on October 18, 2003.  Complaint (Dkt. No. 1) ¶ 18.

held onto the loose cuff end, pulling his hands out of the cell but preventing the plaintiff from placing his other hand through the cell door hatch in order to permit removal of the mechanical restraint from his right wrist.  Complaint (Dkt. No. 1) ¶¶ 13-14.  According to a use of force report generated concerning the incident, however, defendants contend that it was caused by plaintiff's grabbing of defendant Shick's left hand and refusing to release it despite several orders to that affect.  *See* Plaintiff's Motion (Dkt. No. 20) Exh. L.  Despite this discrepancy, plaintiff acknowledges that when Sergeant Christopher announced his intention to open his cell door to end the impasse, plaintiff responded by stating that if the cell door was opened without a lieutenant present, Smith would sue him.  Complaint (Dkt. No. 1) ¶ 14; Smith Aff. (Dkt. No. 20) ¶ 7.

Plaintiff's cell door was subsequently opened at the direction of Sergeant Christopher who, with the assistance of Corrections Officers Knox and Hnatiw, was ultimately able to subdue Smith.  Complaint (Dkt. No. 1) ¶¶ 14-17.  Plaintiff maintains that in the process he was punched and beaten by the officers, and struck by Sergeant Christopher on his neck and back with a walkie talkie.  *Id.*; Smith Aff. (Dkt. No. 20) ¶ 8.  Once order was restored Smith was examined by a nurse at the facility, and

then escorted to a cell equipped with only a mattress, where he was left wearing only his underwear.[6]  Complaint (Dkt. No. 1) ¶¶ 19-20; Smith Aff. (Dkt. No. 20) ¶ 18.

As a result of the incident, plaintiff was issued a misbehavior report charging him with several prison rule violations including, *inter alia*, assault on staff.  Complaint (Dkt. No. 1) ¶ 21; Plaintiff's Motion (Dkt. No. 20) Exh. K.  A Tier III hearing was subsequently convened to address those charges, leading to a finding of guilt and the imposition of a penalty which included five additional years of disciplinary SHU confinement.[7] Defendants' Motion (Dkt. No. 23) Exhs. A, D.  Plaintiff was also criminally

---

[6]     A use of force report generated concerning the incident reflects that upon that examination Smith was found to have suffered from scratches on his back and right wrist.  Plaintiff's Motion (Dkt. No. 20) Exh. L.  The report also reveals that Sergeant Christopher suffered a one inch laceration above his right eye, a one-half inch cut on his right eyebrow, and a bloody nose, and that Corrections Officer Hnatiw was observed with a large hematoma redness and swelling on the right side of his forehead and face.  *Id*.  It was determined that Corrections Officer Shick had swelling of the right hand and Corrections Officer Knox suffered a scratch on the right side of his face.  *Id*.  Both Sergeant Christopher and Hnatiw were transported to a local hospital for treatment of their injuries.  *Id*.

[7]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

prosecuted for his role in the conflict, resulting in a conviction in August of 2006 in Cayuga County Court, based upon a guilty plea, of two counts of assaulting a police officer, and the imposition of two corresponding concurrent sentences of five years to be served consecutively with plaintiff's existing sentence.  Defendants' Motion (Dkt. No. 23) Exh. E.

Plaintiff maintains that following the October 19, 2003 incident, Corrections Officer Whitney and Sergeant Mitchell began to mistreat and threaten him, actions which he attributes to their attempts to convince him to withdraw his pending suit against their co-worker, Sergeant Christopher.  Complaint (Dkt. No. 1) ¶¶ 22, 25, 30, 31.  Plaintiff asserts that in furtherance of those efforts, both Sergeant Mitchell and Corrections Officer Whitney threw dirty water and coffee into his cell, soaking his mattress, and that he was forced to put the mattress on the floor and sleep on it for a period of twenty-eight days without relief.  *Id*. ¶¶ 22, 30, 33.  Plaintiff also maintains that Corrections Officer Whitney fabricated several false misbehavior reports against him and issued threats of reprisal, of an unspecified nature, in the event that he did not withdraw his suit against Sergeant Christopher.[8]  *Id.*

---

[8]     The information contained in the record regarding this element of plaintiff's claim is both minimal and somewhat contradictory.  In his complaint, Smith

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on October 6, 2006, and was thereafter granted leave to proceed *in forma pauperis*.  Dkt. Nos. 1, 5. Named as the defendants in plaintiff's complaint are Corrections Sergeants Christopher and Mitchell, and Corrections Officers Hnatiw, Knox, Shick, and Whitney.  *Id*.  Plaintiff's complaint asserts a single cause of action against each of the five defendants, alleging the use of excessive force and retaliation against defendant Christopher; a cause of action for excessive force against defendants Shick and Hnatiw; and claims of deliberate indifference and retaliation against defendants Whitney and Mitchell. *Id.*

On November 5, 2007, following the close of discovery, plaintiff moved seeking the entry of summary judgment. Dkt. No. 20.  In his motion plaintiff argues there are no genuine issues of material fact requiring trial, and that he is entitled to summary judgment as a matter of law on his

---

asserts that in retaliation for his having filed grievances defendant Whitney issued him fifteen false misbehavior reports, all of which were dismissed.  Complaint (Dkt. No. 1) ¶¶ 22, 30.  Plaintiff's motion papers, however, quantify the false misbehavior reports filed by defendant Whitney at eighteen, sixteen of which were dismissed.  Smith Aff. (Dkt. No. 20) ¶ 11.  Unfortunately, neither the plaintiff nor the defendants have submitted any evidence addressing this claim, including information regarding the dates of issuance, reported dispositions, and the misbehavior reports themselves.

various claims.[9]  *Id*.  On January 28, 2008, the defendants filed papers in

opposition to plaintiff's motion and in support of a cross-motion seeking

the entry of partial summary judgment on behalf of defendants Shick,

Mitchell, and Whitney.  Dkt. No. 23.   In their motion, defendants argue

that 1) plaintiff's claims against defendant Shick should be dismissed,

based upon the fact that he has neither been served nor otherwise

appeared in the action; 2) plaintiff's claims against Whitney and Mitchell

fail to rise to a level of constitutional significance; and 3) in any event

those two defendants are entitled to qualified immunity.  Plaintiff has not

submitted any opposition to defendants' cross-motion.

The parties' motions, which are now ripe for determination, have been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and the Northern District of New York Local

Rule 72.3(c).  *See also* Fed.R.Civ.P. 72(b).

III.  DISCUSSION

A.   Failure to Serve

In their motion, defendants first seek dismissal of plaintiff's claims

---

[9]       While plaintiff claims to have separately submitted a video tape of the
October 19, 2003 incident and a cassette tape, presumably of the ensuing Tier III
hearing, as Exhibits B and C to his motion papers, respectively, there is no record that
those materials were ever received by the court.  *See* Dkt. No. 20.

against defendant Shick, a corrections officer at Auburn named as a defendant in plaintiff's complaint, but never served.  Defendants argue that because the court has yet to acquire jurisdiction over Shick, and the time for service under the applicable provisions under the federal and local rules has long since passed, dismissal of plaintiff's claims against him is appropriate.

Defendants' request for dismissal of plaintiff's claims against Corrections Officer Shick is bottomed upon the requirement imposed by Rule 4(m) of the Federal Rules of Civil Procedure, to the effect that service upon a defendant in an action be made within 120 days of issuance of the summons, absent a court order extending that period.[10] When service has not been effectuated within this prescribed period, "where good cause is shown, the court has no choice but to extend the

---

[10]    That rule provides that

> [i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). This court's local rules shorten the time for service from the 120 day period under Rule 4(m) to sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

time for service, and the inquiry is ended." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). "If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." *Id.* (citing Fed. R. Civ. P. 4(m)); *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("[D]istrict courts have discretion to grant extensions even in the absence of good cause."); *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).

When examining whether to extend the dictated period for service, a district court is afforded ample discretion to weigh the "overlapping equitable considerations" involved in determining whether good cause exists and whether an extension may be granted in the absence of good cause. *See Zapata*, 502 F.3d at 197. A plaintiff's *pro se* status entitles him or her to a certain degree of leniency insofar as service of process is concerned; courts generally favor resolution of a case on its merits rather than on the basis of a procedural technicality. *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991). When a plaintiff proceeds *in forma pauperis*, such as is the case in this instance, the court is obligated to issue the plaintiff's process to the United States Marshal, who must in turn

12

effect service upon the defendants, thereby relieving the plaintiff of the

burden to serve process once reasonable steps have been taken to

identify for the court the defendants named in the complaint.  *Byrd v.*

*Stone*, 94 F.3d 217, 219 (6th Cir. 1996).  This does not mean, however,

that a *pro se* plaintiff may stand idly by upon being notified that efforts by

the U.S. Marshals Service to serve a particular defendant have been

unsuccessful.  *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938-43 (E.D.

Mich. 2004).  In such instances it is incumbent upon the plaintiff to

develop, though pretrial discovery or otherwise, any additional information

necessary to permit service by the United States Marshals Service.  *See*

*VanDiver*, 304 F. Supp. 2d at 942.

    The record in this case discloses no evidence that defendant Shick

was ever served with the summons and complaint in the action, nor does

it reveal a basis to find good cause justifying plaintiff's failure to effectuate

timely service and warranting the exercise of my discretion in favor of

extending the governing period for service.  Accordingly, since this court

has never acquired jurisdiction over defendant Shick, plaintiff's claims

against him are subject to dismissal.  *See, e.g., Michelson v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y.

1989) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).

Ordinarily, dismissal of claims against a named defendant based upon a failure to serve is appropriately ordered without prejudice. *See Nagy v. Dwyer*, 507 F.3d 161, 163 n.2 (2d Cir. 2007) (citing Fed. R. Civ. P. 4(m)). In this instance, however, both the court and plaintiff were notified by a return of service filed on March 5, 2007 that Officer Shick died in 2006. *See* Dkt. No. 8. The substitution of an appropriate representative in the place of a deceased party is governed by Rule 28(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that

> [i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1); *see Graham v. Henderson*, 224 F.R.D. 59, 63-64 (N.D.N.Y. 2004) (Munson, S.J.). In this instance, in light of the fact that a suggestion of Corrections Officer Shick's death was received on March 5,

14

2007, and no application was made by the plaintiff within ninety days thereafter to substitute an appropriate estate representative, I recommend that the dismissal of plaintiff's claims against that defendant be with prejudice.

B.   Plaintiff's Failure to Oppose Defendants' Motion

Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose defendants' summary judgment cross-motion, and specifically whether that failure automatically entitles the defendants to dismissal of the portions of plaintiff's complain now challenged, based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  Undeniably, *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions.  *See Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)).  Despite this measure of deference, the failure of an

15

unrepresented plaintiff to oppose a summary judgment motion does not

preclude the court from deciding the motion. *Robinson v. Delgado*, No.

96-CV-169, 1998 WL 278264, at \*2 (N.D.N.Y. May 22, 1998) (Pooler, J. &

Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at \*1

(N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980

F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can

be seen by the face of Local Rule 7.1(b)(3), however, before summary

judgment can be granted under such circumstances the court must review

the motion to determine whether it is facially meritorious.  *See Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 231-32

(N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542,

545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion

does not assure that the motion, however lacking in merit, will be granted,

that failure is not without consequences.  By electing not to submit papers

in opposition to their motion, plaintiff has left the facts set forth in

defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this

district have routinely invoked Local Rule 7.1(a)(3) and its predecessor,

Local Rule 7.1(f), deeming facts set forth in a statement of material facts

not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[11]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

C.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

---

[11]    Local Rule 7.1(a)(3) provides that "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).

Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247,

106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old

Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is

"material", for purposes of this inquiry, if it "might affect the outcome of the

suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.

2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

Though *pro se* plaintiffs are entitled to special latitude when defending

against summary judgment motions, they must establish more than mere

"metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986);

*but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999)

(noting obligation of court to consider whether *pro se* plaintiff understood

nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

18

to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict"). In a case such as this, where parties have interposed cross-motions for summary judgment, each motion must be independently assessed, using this standard as a backdrop. *See Light Sources, Inc.v.*

*Cosmedico Light, Inc.*, 360 F. Supp. 2d 432, 434 (D. Conn. 2005).

    D.   <u>Excessive Force</u>

    The centerpiece of plaintiff's complaint in this action is the incident which occurred on October 19, 2003 and his claim that during the course of that encounter defendants Christopher, Shick, Hnatiw and Knox applied excessive force in subduing and removing him from his SHU cell.  Plaintiff contends that as a matter of law he is entitled to judgment with regard to that claim, asserting the lack of any genuinely disputed issues of material fact which must be determined before that claim can be adjudicated. While opposing this portion of plaintiff's motion, defendants do not themselves seek summary judgment with respect to this claim.

    Plaintiff's excessive force claim implicates the right of an inmate under the Eighth Amendment to be free from cruel and unusual punishment based upon exposure to conditions of confinement which are abhorrent to civilized notions and inconsistent with contemporary values. The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble,*

429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; accordingly, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

21

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

Claims that allege that an inmate has been assaulted or subjected to excessive force implicate considerations under the Eighth Amendment's prohibition against cruel and unusual punishment.  A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475 U.S. at 319, 106 S. Ct. at 1084 (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999).  The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992) (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462 (1973)).

22

Eighth Amendment analysis requires both objective and subjective examinations.  *Hudson,* 503 U.S. at 8, 112 S. Ct. at 999; *Wilson*, 501 U.S. at 298-99, 111 S. Ct. at 2324; *Griffen*, 193 F.3d at 91.  The objective prong of the inquiry is contextual, and relies upon "contemporary standards of decency."  *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999-1000 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976)). When addressing this component of an excessive force claim under the Eighth Amendment calculus, the court can consider the extent of the injury suffered by the inmate plaintiff.  While the absence of significant injury is certainly relevant, it is not dispositive.  *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.  The extent of an inmate's injury is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force.  *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085 (citing *Johnson*, 481 F.2d at 1033).  Under *Hudson*, even if the injuries suffered by a plaintiff "'were not permanent or severe'", a plaintiff may still recover if "'the force used was unreasonable and excessive.'"  *Corselli v. Coughlin*,

23

842 F.2d 23, 26 (2d Cir. 1988) (quoting *Robinson v. Via*, 821 F.2d 913, 924 (2d Cir.1987)).

According to the plaintiff, the October 19, 2003 altercation between him and several corrections workers was precipitated by the actions of Corrections Officer Shick and Smith's insistence on having a lieutenant present when his cell door was opened.  Smith in essence alleges that the entire incident was staged, in response to his complaint made a day earlier regarding Corrections Sergeant Christopher and the fact that only four days before Sergeant Christopher was served with a summons and complaint in *Smith I*, in which he also complains regarding the use of excessive force.  *See Smith I* (Dkt. No. 10) (acknowledgment of service). Plaintiff asserts that upon opening his cell door the defendants entered without provocation and that defendants Knox, Christopher, Hnatiw, and Shick repeatedly punched and kicked him in the chest, ribs, back, neck, and legs causing him to suffer injury to his back, neck, and wrist.  Implicit in his motion is plaintiff's contention that the actions of the corrections officers involved were not taken in good faith for the purpose of restoring order, but instead were calculated to cause him harm.

Surprisingly, in the face of plaintiff's motion defendants have elected

24

not to submit affidavits from any of the active participants or witnesses setting forth their versions of the relevant events and refuting plaintiff's allegations.[12]  Nonetheless, plaintiff's submissions themselves as well as other documents in the record now before the court reveal a sharp conflict concerning the incident and its underlying circumstances.  Several documents contained within the record, including those describing the use of force generated concerning the incident, for example, suggest that it was the plaintiff's actions that precipitated the event and necessitated the application of force to subdue him.  *See, e.g.,* Complaint (Dkt. No. 1) Exh. L.  The fact that following the incident the plaintiff was charged with several prison rule violations, including assault on staff and found guilty of those charges following a Tier III hearing, resulting in the imposition of a penalty which included five years of disciplinary SHU confinement, also tends to support defendants' version of these events.  Defendants' Motion

---

[12]      As a substitute for sworn affidavits, defendants offer documents which include, *inter alia,* unsworn statements given by the defendants regarding the October 19, 2003 incident as well as addressing other matters including plaintiff's retaliation claims against defendants Whitney and Mitchell.  Absent the applicability of a recognized exception such statements constitute hearsay, with no corresponding evidentiary value, and do not suffice to carry a party's burden under Rule 56(e) of the Federal Rules of Civil Procedure to demonstrate the existence of a genuine, material issue of triable fact.  *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995).

(Dkt. No. 23) Exhs. A, D.  Perhaps most persuasive in at least raising an issue of fact regarding provocation for the incident is the fact that plaintiff was convicted, based upon his plea of guilty, of two counts of assault on a police officer as a result of the altercation.  *Id.,* Exh. E.

Analysis of plaintiff's excessive force claim requires the finder of fact to examine whether the force applied represented a good faith effort to restore or enforce discipline, or instead was maliciously and sadistically exerted for the purpose of causing harm.  *Hudson,* 501 U.S. at 6-7, 112 S. Ct. 995.  The record now before the court contains evidence from which a reasonable factfinder could infer that the force applied by prison officials was reasonably necessary in order to restore order, and was not motivated out of an intent to cause harm to the plaintiff.  The record therefore establishes the existence of genuine, triable issues of material fact which must be resolved before plaintiff's excessive force claims can be adjudicated.

E.    Retaliation

Another major component of plaintiff's complaint surrounds his claims of unlawful retaliation.  Plaintiff asserts that in response to his filing and pursuit of the claims set forth in *Smith I*, as well as for having filed

grievances against Sergeant Smith and other corrections workers at Auburn, defendants harassed and retaliated against him, including by making obscene gestures and threats, issuing false misbehavior reports, and throwing water and coffee into his cell.  Both parties have moved for summary judgment with respect to this cause of action.

A claim of unlawful retaliation such as that now raised by the plaintiff implicates the First Amendment right of free speech.  When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted, and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (same).

27

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation causes of action thus requires careful consideration of the protected activity in which the inmate plaintiff claims

to have been engaged, the adverse action allegedly taken against him or her, and the evidence tending to link the two.  When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing those claims. *Flaherty*, 713 F.2d at 13.

Typical of many complaints lodged by prison inmates, the allegations in support of plaintiff's retaliation claim are set forth in conclusory terms and in large part bereft of specifics.  Undeniably, plaintiff asserts his participation in constitutionally protected activity, including through the filing and prosecution of claims in *Smith I* and the filing of grievances complaining of the actions of prison officials at Auburn, principally against defendant Christopher.  *Dawes,* 239 F.3d at 492-93; *Graham,* 89 F.3d at 80.  *See Bounds v. Smith,* 430 U.S. 817, 821-32, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Amaker v. Goord,* No. 98 Civ. 3634, 2002 WL 523371, at *14 (S.D.N.Y. March 29, 2002).  Plaintiff also offers allegations of adverse action suffered by him, including the alleged verbal harassment and use of obscene gestures toward him by corrections officers, the

throwing of coffee and water into his cell, and the filing of false misbehavior reports, all allegedly prompted in response to his protected activity.[13]  Conspicuously lacking from the record, however, is evidence from which it could be said that no reasonable factfinder could conclude that the adverse action now complained of was not motivated by retaliatory animus and in response to plaintiff's protected activity.  In light of this fact, plaintiff's motion for summary judgment regarding the retaliation claims must fail.  *See Amaker*, 2002 WL 523371, at *14-15.

In their cross-motion, defendants assert that plaintiff's retaliation claims against defendants Mitchell and Whitney are legally insufficient as a matter of law, arguing that there are no issues of material fact requiring trial and that the plaintiff's allegations do not support such a cause of action.  In their motion, defendants focus on the adverse action prong of the retaliation algorithm and maintain that plaintiff's allegations, even if true, are insufficient to support a finding of adverse action.

1.   Dirty Water and Coffee

Plaintiff alleges that defendants Sergeant Mitchell and Corrections

---

[13]     As will be seen, some though not all, Smith's allegations in this regard, if proven, would support a finding of adverse action for purposes sufficient to satisfy the First Amendment's requirements.  *See* pp. 30-38, *post.*

Officer Whitney retaliated against him for filing grievances and

commencing a prior lawsuit by throwing dirty water and coffee into his cell

on multiple occasions.  The specifics of this portion of plaintiff's retaliation

cause of action include his claim that defendant Sergeant Mitchell threw

buckets of dirty water and cups of coffee in his cell on October 23 and 24,

2003, and that defendant Whitney threw dirty water and coffee in his cell

on October 20, 23 and 24, 2003, as well as on November 2, 5, and 7,

2003.[14]  Complaint (Dkt. No. 1) ¶¶ 30, 31.  Plaintiff asserts that the smelly

water and coffee soaked his mattress and he was not allowed to obtain

new bedding and that as a result he was forced to sleep on a wet

unsanitary mattress for a total of twenty-eight days.  *Id.* ¶ 22.   The

defendants have denied harassing plaintiff, and defendant Whitney has

specifically denied throwing any coffee or dirty water in his cell.

Defendants' Motion (Dkt. No. 23-4) Exh. F.

_____An action taken by prison officials will be considered "adverse" only if

the action "would deter a similarly situated individual of ordinary firmness

from exercising his or her constitutional rights ... [o]therwise, the

---

[14]     While in the facts section of his complaint plaintiff does not allege that
defendant Whitney threw dirty water or cups of coffee into his cell on October 20,
2003, he does make that claim in his cause of action section.  *Compare* Complaint
(Dkt. No. 1) ¶ 25 *with* ¶ 30.

retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d 489 at 493 (internal citations omitted).  The retaliatory actions allegedly taken by defendants Whitney and Mitchell were specifically directed at Smith, and arguably substantial enough to deter the filing of legitimate grievances against prison officers. At this procedural juncture I am unable to conclude as a matter of law that allegedly throwing smelly water and coffee into a prisoner's SHU cell on eight separate occasions over a fifteen-day period, in an effort to intimidate and harass an inmate to drop a lawsuit and stop filing grievances, is *de minimis* and that no reasonable factfinder could conclude otherwise.  *See Keesh v. Goord*, No. 04-CV-271A, 2007 WL 2903682, at *10 (W.D.N.Y. Oct. 1, 2007) (24 hours of alleged retaliatory keeplock not *de minimis*).  Accordingly, I recommend that the portion of defendants' motion directed toward plaintiff's allegations of the throwing of coffee and smelly water into plaintiff's cell be denied.

     2.    Verbal Threats and Harassment

In support of his retaliation claim plaintiff also alleges that he was subjected to verbal threats and harassment by defendants Mitchell and

32

Whitney, in an effort to convince him to drop his pending lawsuit.[15]

Complaint (Dkt. No. 1) ¶¶ 26, 30, 31.  While submitting no affidavits to this

effect defendants Mitchell and Whitney, who have gone on record as

denying making any threats or harassing plaintiff, now move for summary

judgment contending that the making of verbal threats against an inmate,

without any actual resulting injury, does not establish a constitutional

violation.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 23-3) ¶ 7;

Defendants' Motion (Dkt. No. 23-4) Exh. E.

    42 U.S.C. § 1983 was not designed to rectify harassment or verbal

abuse.  *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)

(citations omitted).  As such, the mere allegation by a prison inmate that

he or she has experienced verbal abuse from prison workers does not rise

to the level of a constitutional violation, and is not independently

cognizable under 42 U.S.C. § 1983.[16]  *See Moncrieffe v. Witbeck*, No. 97-

---

[15]    Plaintiff also asserts a claim of retaliation against defendant Christopher alleging that the assault from October 19, 2003 was retaliatory, and additionally claiming that he was threatened by defendant Christopher on January 20, 2006, also in retaliation for having commenced *Smith I*.  Complaint (Dkt. No. 1) ¶¶ 23, 26. Because defendants have not moved for summary judgment dismissing this portion of plaintiff's retaliation claim, it is not addressed in this report.

[16]    For similar reasons, the allegation that defendant Christopher directed an obscene gesture toward the plaintiff, Complaint (Dkt. No. 1) ¶ 11, fails to support a constitutional claim.  *See Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (indicating that ". . . profanity alone . . . does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983").

CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker*, No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J. ) ("Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation.").

Plaintiff's claims regarding verbal abuse extend beyond merely asserting that it represents a constitutional violation in and of itself. Plaintiff's claims against both Sergeant Mitchell and Corrections Officer Whitney are directly tied into their alleged response to his filing of *Smith I* and grievances against their fellow workers.  Plaintiff alleges, for example, that Sergeant Mitchell "threatened [him] numerous times to drop [his] lawsuit ... or [he will] never see the streets again."  Complaint (Dkt. No. 1) ¶ 31.  Similarly, plaintiff asserts that Corrections Officer Whitney harassed him for over two years, and specifically notes that on several specified dates in October and November of 2003 he threatened plaintiff to drop his lawsuit.  *Id.* ¶ 30.

While in some instances verbal threats may suffice to constitute

adverse action for purposes of a retaliation claim, whether they do in a particular case is dependent upon the specificity of the threat and the context in which it was made. *Compare Hepworth v. Suffolk County,* No. 02-CV- 6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (numerous verbal threats that inmate "would receive another beating or be killed" was enough evidence that a "reasonable jury could find that the officers unconstitutionally retaliated against" inmate) *with Bartley v. Collins,* No. 05 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we going to get you, you better drop the suit," do not rise to the level of adverse action); *Alicea v. Howell,* 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim," especially when the threat was never carried out).

Considered against this backdrop, I conclude that plaintiff's allegations against defendants Mitchell and Whitney, even if true, claim nothing more than simple verbal harassment which does not rise to a level of constitutional significance. Aside from claiming that defendants Mitchell

and Whitney threatened the plaintiff in an effort to convince him to withdraw his suit in *Smith I* and stop filing grievances against fellow prison workers, plaintiff does not allege what specific action was threatened, nor is there any indication, aside from the water and coffee throwing – which I have already found represents a distinct, potentially actionable form of retaliation claim – of what action would be taken by them in the event that plaintiff failed to accede to their demands.  Given the vagueness of the alleged threats and lack of any actual injury, no factfinder could conclude that the threats were such that it would deter an inmate of "ordinary firmness" from engaging in protected activity.  *Bartley,* 2006 WL 1289256, at *6; *Alicea*, 387 F. Supp. at 237.  I therefore recommend that the portion of defendants' motion seeking summary dismissal of plaintiff's claims based on verbal threats and harassment from defendants Whitney and Mitchell be granted.

     3.    <u>False Misbehavior Reports</u>

Plaintiff alleges that in furtherance of an effort to convince plaintiff to drop his lawsuit against Sergeant Christopher, and to stop filing grievances against correctional officers at Auburn, Corrections Officer Whitney retaliated against him by filing several false misbehavior reports,

all or most of which were eventually dismissed.  Complaint (Dkt. No. 1) ¶

30.  In addition, plaintiff alleges that Sergeant Christopher fabricated

reports and testified falsely at plaintiff's Tier III hearing.  *Id.* ¶ 21.

Defendant Whitney contends that as a matter of law plaintiff has not

alleged a constitutional violation.

Standing alone, the mere allegation that a false misbehavior report

has been filed against an inmate does not implicate constitutional

conduct.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman*

*v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982,

108 S. Ct. 1273 (1988)).  The further assertion that the false misbehavior

report has been prompted by retaliatory animus and relates to an inmate

having engaged in protected activity, however, can suffice to state a claim

for retaliation.  *Franco*, 854 F.2d at 589.

While in theory the issuance of a false misbehavior report motivated

out of retaliatory animus can support an actionable claim under the First

Amendment, in the face of defendants' summary judgment motion plaintiff

has failed to offer any evidence to establish a *prima facie* cause of action

for unlawful retaliation.  Neither plaintiff's complaint nor his supporting

affidavit provides any specifics regarding the nature of the misbehavior

reports and their timing, nor does it establish any other basis to conclude

the existence of the requisite nexus between plaintiff's protected conduct

and the issuance of those reports.  Accordingly, finding that plaintiff has

failed to carry his burden of establishing the existence of a facially

plausible retaliation claim, I recommend that the portion of defendants'

summary judgment motion addressing this claim be granted.

     F.    <u>Prison Conditions</u>

Liberally construed, plaintiff's complaint could be deemed to include

a claim that the conditions which he experienced, including when exposed

to smelly water and coffee being thrown into his cell, having to sleep on a

soaked mattress, and being placed in a cell following the October 19,

2003 incident wearing only his underwear, represented cruel and unusual

punishment, in violation of his rights under the Eighth Amendment.  While

defendants do not attack this portion of his claim, plaintiff's motion, in

which he seeks summary judgment on all claims, has been considered by

the court as addressing this claim.

Claims such as those now presented, involving conditions of

confinement, are analyzed under the same Eighth Amendment principles

outlined earlier in this report.[17]  In order to recommend that summary

judgment be granted in plaintiff's favor I must conclude that when that

analysis is made based upon the record now before the court, no

reasonable factfinder could determine that the conditions which he

experienced are incompatible with evolving standards of decency.  *Estelle,*

429 U.S. at 102, 104, 97 S. Ct. at 290, 291; *Whitley*, 475 U.S. at 319, 106

S. Ct. at 1084.  In this instance I am unable to make that finding.  The

conditions of which plaintiff now complains were temporary, with no proof

indicating that he suffered any "specific deprivation of a single human

need . . .," or other related harm – a predicate to the finding of an Eight

Amendment violation.  *See Wilson,* 501 U.S. at 305, 111 S. Ct. at 2327.

Any unpleasantness which plaintiff may have suffered as a result of this

"unsanitary" mattress does not rise to a level of "unquestioned and serious

deprivation of basic human needs" necessary to establish an Eighth

Amendment violation.  *Rhodes,* 452 U.S. at 347, 101 S. Ct. at 2399; *see*

*also Johnson v. Pelker,* 891 F.2d 136, 138-39 (7th Cir. 1989) (denial of dry

clothing and bedding did not support a constitutional violation); *McNatt v.*

*Unit Manager Parker,* No. 3:99CV1397, 2000 WL 307000, at *4 (D. Conn.

---

[17]        *See* pp. 20-23, *ante.*

Jan. 18, 2000) (all conditions combined in restrictive housing unit,

including stained, smelling mattresses, uncleaned cell, no bedding for six

days for toiletries or clothing for six days, no shower shoes, dirty showers,

cold water, and smaller food portions, did not rise to a level of an Eighth

Amendment violation).  Since a reasonable factfinder could conclude that

the conditions experienced by the plaintiff were transitory and not

tantamount to cruel and unusual punishment, I recommend that the

portion of plaintiff's summary judgment motion addressing his Eighth

Amendment conditions of confinement claim be denied.

> G.    Qualified Immunity

Defendants Mitchell and Whitney contend that if plaintiff's

constitutional rights were in fact abridged, they are nonetheless entitled to

qualified immunity.  Qualified immunity shields government officials

performing discretionary functions from liability for damages "insofar as

their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Harlow v.

Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations

omitted).  Accordingly, governmental officials sued for damages "are

entitled to qualified immunity if 1) their actions did not violate clearly

established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).  The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001); *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir. 1972)).

Qualified immunity analysis involves a three step inquiry.  *Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir. 2003).  As a

41

threshold matter it must first be determined whether, based upon the facts

alleged, plaintiff has facially established a constitutional violation. *Id.*;

*Gilles v. Repicky*, 511 F.3d 239, 243-44 (2d Cir. 2007).  If the answer to

this inquiry is in the affirmative, the court must then turn its focus to

whether the right in issue was clearly established at the time of the alleged

violation.  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct.

2151, 2156 (2001)); *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d

Cir. 2002).  Finally, if the plaintiff had a clearly established, constitutionally

protected right that was violated, he or she must demonstrate that it was

not objectively reasonable for the defendant to believe that his action did

not violate such law.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133

(quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting,

in turn, *Salim*, 93 F.3d at 89)).

       The portion of plaintiff's retaliation claim which, if this report is

adopted, will survive for trial surrounds plaintiff's allegations regarding the

actions of Sergeant Mitchell and Corrections Officer Whitney in throwing

dirty water and coffee into his cell in retaliation for his having engaged in

protected activity.  In seeking a finding of their entitlement to qualified

immunity with regard to this facet of plaintiff's claim, defendants Mitchell

42

and Whitney overlook the fact that the constitutional right of an inmate to seek a remedy for his grievances without suffering retaliation was well established at the time the alleged violations occurred.  *See Franco*, 854 F.2d at 589-90.  Simply stated, in or about October of 2003 it should have been abundantly clear to the defendants that conduct such as that now alleged, in support of a campaign to deter or punish protected activity, runs afoul of the First Amendment's protections and no reasonable corrections officer could have believed otherwise.  Accordingly, I find defendants are not entitled to qualified immunity with regard to the surviving portion of plaintiff's retaliation claim.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Both parties in this action are before the court seeking the entry of summary judgment.  Addressing plaintiff's motion, I find that he has failed to carry his burden of establishing the lack of any genuinely disputed issue of material fact requiring a trial and that, accordingly, he is not entitled to summary judgment with regard to his claims of excessive force, retaliation, and cruel and unusual punishment.

Turning to defendants' motion I find first, based upon a thorough review of the comprehensive record now before the court, that plaintiff's

allegations regarding the verbal threats made by defendants Mitchell and Whitney fail to rise to a level of constitutional significance, and that while his allegations regarding the filing of false misbehavior reports could in theory establish the existence of a cognizable retaliation claim, he has failed to demonstrate the existence of a *prima facie* retaliation claim given the lack of any evidence tending to support his claim of a nexus between plaintiff's protected activity and the filing of those misbehavior reports.  I further find, however, that plaintiff's retaliation claims against defendants Whitney and Mitchell, based upon their throwing of water and coffee into his cell on multiple occasions, allegedly in an effort to convince plaintiff to withdraw his lawsuit and complaints against Sergeant Christopher and others, sufficiently alleges a plausible claim of retaliation, and that they are not entitled to qualified immunity with respect to that claim, and therefore recommend denial of the portion of defendants' motion addressing that claim.  Finally, since according to the record defendant Shick was never served with the summons and complaint in this action, and a suggestion of his death was made on the record more than ninety days ago, I recommend dismissal of plaintiff's claims against defendant Shick, with prejudice.

Based upon the foregoing, it is therefore hereby

RECOMMENDED, that plaintiff's motion for summary judgment (Dkt. No. 20) be DENIED in its entirety, and defendants' motion for partial summary judgment (Dkt. No. 24) be GRANTED, in part, and that plaintiff's claims against defendant Shick, as well as his claims against defendants Mitchell and Whitney alleging verbal threats and the filing of false misbehavior reports, be DISMISSED, all with prejudice, but that the portion of defendants' motion addressing plaintiff's dirty water and coffee retaliation claim against defendants Mitchell and Whitney be DENIED.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      August 19, 2008
            Syracuse, New York